# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**CRAYTONIA BADGER**  **PLAINTIFF**
**ADC #162710**

v.                    No: 2:22-cv-00071-PSH

**KENYON RANDLE,** *et al.*                    **DEFENDANTS**

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff Craytonia Badger, an inmate at the Arkansas Division of Correction's East Arkansas Regional Unit, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on April 29, 2022 (Doc. No. 2). At the Court's direction, Badger filed an amended complaint on May 16, 2022 (Doc. No. 6), and recently moved to amend his complaint again (Doc. No. 10). The Court granted his motion and docketed Badger's Second Amended Complaint (Doc. No. 12). The Court screened Badger's Second Amended Complaint, allowed certain Eighth Amendment claims against defendants Major K. Randle and Deputy Warden Michael Richardson (the "Defendants") to proceed, and dismissed his remaining claims. *See* Doc. Nos. 14 & 27.

Before the Court is a motion for summary judgment, a brief in support, and a statement of undisputed material facts (Doc. Nos. 28-30) as well as an amended motion for summary judgment, a brief in support, and a statement of undisputed

material facts[1] (Doc. Nos. 32-34) filed by the Defendants, claiming that Badger did not exhaust available administrative remedies with respect to his claims against them before he filed this lawsuit. Despite the Court's order notifying Badger of his opportunity to file a response and statement of disputed facts, he did not do so. *See* Doc. No. 35. Accordingly, the Defendants' statements of undisputed facts, Doc. Nos. 30 & 34, are deemed admitted. *See* Local Rule 56.1(c). For the reasons described below, the Defendants' motion for summary judgment is granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in

---

[1] The amended motion is identical to the original motion except that an argument regarding dismissed defendant William Straughn is removed from the amended motion.

his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

Defendants argue that they are entitled to summary judgment on Badger's claims because he failed to exhaust all available administrative remedies before he filed this lawsuit. *See* Doc. Nos. 29 & 33. In support of their motions, the Defendants submitted: the declaration of Terri Grigsby Brown, the ADC's Inmate

Grievance Supervisor (Doc. No. 28-1); the ADC's grievance policy (Doc. No. 28-2); a copy of Badger's grievance history (Doc. No. 28-3); a copy of Grievance EAM22-00406 (Doc. No. 28-4); a copy of Grievance EAM22-00407 (Doc. No. 28-5); a copy of EAM22-00485 (Doc. No. 28-6); a copy of EAM22-00486 (Doc. No. 28-7); a copy of EAM22-00488 (Doc. No. 28-8); a copy of EAM22-00587 (Doc. No. 28-9); a copy of EAM22-00613 (Doc. No. 28-10); a copy of EAM22-00614 (Doc. No. 28-11); and a copy of EAM22-00691 (Doc. No. 28-12).[2]

## A.   *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court.  *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014).  Exhaustion under the PLRA is mandatory.  *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The PLRA does not prescribe the manner in which exhaustion occurs.  *See Jones v. Bock*, 549 U.S. at 218.  It merely requires compliance with prison grievance

---

[2] The same exhibits are attached to the Defendants' amended motion, with the exception of an amended declaration by Terri Grigsby Brown.  *See* Doc. No. 32 at 9-103.

procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy, Administrative Directive 19-34, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 28-2 at 5. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form (Attachment I) within 15 days after the occurrence of the incident. *Id.* at 6. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id*. at 5. Only one problem or issue may be grieved per grievance form. *Id.* An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 6. A problem solver or staff member holding the rank of sergeant or above can collect the grievance and return the yellow and pink copies of the grievance to the inmate as receipts. *Id.* at 7. The problem solver or staff member investigates the complaint, and may attempt to resolve the complaint by meeting with the inmate or taking certain other steps, but ultimately must provide a written response at the bottom of the form. *Id.* at 7-8. If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, he may then complete Step Two

of the grievance procedure and submit either the pink or yellow copy of his Unit Level Grievance Form as a formal grievance. *Id.* at 8. The inmate retains either the pink or yellow copy, whichever he did not submit for Step Two. *Id.* at 9. If a formal grievance is medical in nature, it is assigned a code and forwarded to the appropriate medical personnel for response. *Id.* at 10.

      The inmate should receive a Response to the Unit Level Grievance Form (Attachment III or IV depending on whether the grievance is medical in nature), or an Acknowledgement or Rejection of Unit Level Grievance (Attachment II). *Id.* at 10-11. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can then appeal to the Deputy Director. *Id.* at 12. An inmate's appeal must be written in the space provided on the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgment or Rejection of Unit Level Grievance (Attachment II). *Id.* at 12. The inmate must include the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with his appeal. *Id.* If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected. *Id.* Once the Deputy Director responds or the appeal is rejected, the grievance process is complete. *Id.* at 13. According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days

absent an extension or unforeseen circumstances. *Id.* at 14. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 19.

### B.     *Badger's Complaint Allegations*

In his second amended complaint, Badger alleged that in February 2022, Major K. Randle put a white powder substance in his food, causing him to become ill for two weeks with headaches, fever, stomach pain, and diarrhea. Doc. No. 12 at 4. Badger further claimed that because he was scared that Randle was trying to take his life, he went on a hunger strike to prevent Randle from contaminating his food on February 20, 2022. *Id.* Badger later informed non-party Lt. Wilson that he wanted to end his hunger strike. *Id.* at 6. Badger alleged that Randle refused to allow him to end his hunger strike, and he was forced to remain without food for eight additional days, until April 8, 2022. *Id.* at 6-8. Badger filed a grievance against Randle as a result. *Id.* at 6 & 12 (EAM22-00613). He alleged that Deputy Warden Michael Richardson received his grievance on April 3, 2022, but did not take action to end Badger's hunger strike for eight days. *Id.* at 6 & 8. Badger also sued Deputy Director William Straughn for failing to act in response to his grievance (which was received by Straughn on May 6, 2022). *Id.* at 7-8 & 12. Finally, Badger claimed that because he complained that Randle was the reason for his hunger strike, Randle verbally threatened him and took his legal materials and personal property on

February 20, 2022, frustrating Badger's right to access the courts, until his property was returned on March 11, 2022. *Id.* at 5 & 7-8. He also sued property room officer Angela Jenkins-White for failing to return his legal materials. *Id.* at 6 & 8.

Badger's Eighth Amendment claims against Randle and Richardson were allowed to proceed while the following claims were dismissed for failure to state a claim upon which relief may be granted: Badger's claim against Straughn based on his role in the grievance process; Badger's First Amendment access-to-courts claim against Randle and Jenkins-White regarding legal materials taken from him; and Badger's claim against Randle based on his verbal comments. Doc. No. 27.

## C.   *Badger's Grievances & Exhaustion*

In her declaration, Inmate Grievance Supervisor Brown states that she reviewed Badger's non-medical grievance file for any grievances concerning his claims in this case. Doc. No. 32 at 15, ¶¶ 33-34. Brown states that she found nine non-medical grievances submitted by Badger between February 2022 (the date of the incident described in his lawsuit) and April 29, 2022 (the date he filed this lawsuit). *Id.* at ¶ 36.

Of these grievances, four were tangentially related to Badger's claims, but did not name or describe Randle or Richardson or describe his complaint allegations against them: EAM22-00406 (alleging hunger strike was not appropriately documented by ADC staff); EAM22-00407 (alleging hunger strike was not

appropriately documented and naming nondefendants Bynum and Hawkins); EAM22-00587 (alleging nondefendants Sergeant Akins and Corporal James tried to force him off his hunger strike); and EAM22-00614 (same as EAM22-00587 and rejected as a duplicate). EAM22-00486 was relevant to Badger's dismissed claim that Jenkins-White violated his First Amendment right to access the courts by taking his legal property. Two grievances were not even tangentially relevant to Badger's claims in this case: EAM22-00488 (complaining of Sergeant Williams' unprofessional behavior) and EAM22-00691 (phone in isolation not working). Because these grievances do not describe Badger's complaint allegations against Randle or Richardson, they do not serve to exhaust his claims in this case.

None of these grievances named defendant Richardson or described Badger's claim that he failed to take corrective action. Accordingly, Badger's claims against Richardson are unexhausted and Richardson is entitled to judgment as a matter of law. Only two of Badger's grievances relate to Badger's Eighth Amendment complaint allegations against Randle: EAM22-00485 and EAM22-00613. Each is described below.

**EAM22-00485.** Badger submitted a Step One informal resolution on March 2, 2022, stating:[3]

---

[3] Grievances are transcribed verbatim without any corrections for misspellings or mistakes.

> On 2/20/22, I C. Badger went on "Hungry Strike". I was escorted to the hall cage by Bruce Boom and Sgt. Williams. While in the hall cage and at approx. 1:30-2:30 p.m. Lt. Cobb came and gave me a affidavit to complete; stating my reasons for going on "Hungry Strike". I inmate Badger stated his reasons that Major Randle had put something in his food during a shakedown prior and he'd been sick, because of that reason. Thereafter, Ms. Norment appear to inventory my property in which time Major Randle advised me that Ms. Norment would only be taking my food items and all other items can be taken with me, including, my legal mail. Thereafter, Major Randle appeared once more – uncooperative and aggressive. He then advised me that my affidavit was "bullshit". He then told Ms. Norment to take all my property and give me soap, towels and things like that. He also told her not to give me my legal mail. M. Randle did retaliate against and impose punishment against me in response to me going on a "Hungry Strike" by taking my property.

Doc. No. 28-6 at 3. Badger further alleged that Randle told ADC personnel to take his property and not give him his legal mail. *Id.* Badger proceeded to Step Two after receiving no response to his informal resolution, and the deputy warden responded:

> Major Randle stated that he did not put anything in your food. Because you stated you were on hunger strike at the time you could not have any food items. Each item you received while in isolation, were items that policy permits, anything that you were not given was stored in the property room. This should address your concerns.

*Id.* at 4. Badger disagreed with the warden's decision and appealed, stating:

> Because regardless of me be placed in isolation, I wasn't placed in there for punishment, but rather for "Hungry Strike," for which is not a punishment. Also, the matter is my legal mail. I has a constitutional right to access the court at any time. They took my legal mail for 18 days and excluded me from communications with the court. The Major retaliated against me because of the affidavit I wrote concerning him putting something in my food prior to this incident for which is my

>reason for going on "Hungry Strike" to begin with. Hungry Strike is not a punishment.

*Id.* Straughn denied his appeal on April 5, 2022, stating that he had reviewed Badger's appeal and supporting documentation and found that Badger listed more than one issue in his grievance. *Id.* at 5. Straughn stated that he would only address Badger's claims regarding his legal property and did so. *Id.*

Badger's allegations regarding Randle's behavior do not clearly describe his Eighth Amendment claims against Randle; but even if they were construed as describing those claims, those allegations were not addressed in the appeal response and not decided on the merits. As previously stated, the ADC's grievance policy informs inmates that only one problem or issue should be described in their grievance, not multiple problems or issues. *See* Doc. No. 28-2 at 5. The inmates are instructed that they must use a separate form for each issue. *Id.* ("An inmate must use a separate form for each issue. Only one issue will be addressed in the response to a grievance. Additional problems/issues contained in the grievance will not be addressed and will not be considered as exhausted."). Because the appeal response to EAM22-00485 only addressed Badger's property complaints (a claim that has been dismissed in this case), EAM22-00485 does not serve to exhaust Badger's Eighth Amendment claims against Randle.

**EAM22-00613.** In an undated Step One informal resolution, Badger alleges on the unspecified "above date" he wanted to end his hunger strike. Doc. No. 28-10

at 3.  He further alleged that Randle did not allow him to end his hunger strike or offer him an opportunity to eat that day.  *Id.* On April 2, 2022, Badger proceeded to Step Two claiming the issue was "not resolved."  *Id.*  In his response, the Deputy Warden found the grievance without merit, stating that Randal and Corporal Akins denied Badger's allegations.  *Id.* at 5.  Badger appealed the deputy warden's decision, stating that Lieutenant Wilson should have been questioned.  *Id.*  On May 25, 2022, after reviewing Badger's appeal and supporting documentation, William Straughn rejected Badger's appeal because he did not provide a specific date for his allegations as required by Administrative Directive 19-34.  *Id.* at 6.  Straughn also stated no proper investigation could be conducted due to that omission and stated the merits of Badger's appeal would not be addressed. *Id.*  As previously stated, the ADC inmate grievance policy instructs inmates that when submitting a grievance, the grievant must "write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." Doc. No. 28-2 at 6.  Although EAM22-00613 described Badger's complaint allegations against Randle, it does not serve to exhaust his claims because his appeal was rejected and not addressed on the merits.

## IV. Conclusion

The Defendants have provided evidence that Badger did not complete the grievance process with respect to any grievance naming them or describing his complaint allegations against them. Accordingly, the Defendants' motions for summary judgment (Doc. Nos. 28 & 32) are granted, and Badger's claims are dismissed without prejudice for failure to exhaust available administrative remedies.

DATED this 12th day of April, 2023.

_____
UNITED STATES MAGISTRATE JUDGE